# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**BLACKHAWK MINING, LLC,**
**Employer Below, Petitioner**

**FILED**
**December 27, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 23-ICA-251**      (JCN: 2021003319)

**BRANDON GILFILEN,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Blackhawk Mining, LLC ("Blackhawk Mining")[1] appeals the May 9, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent Brandon Gilfilen filed a timely response.[2] Petitioner did not file a reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order, which granted Mr. Gilfilen a 7% permanent partial disability ("PPD") award, and instead granting a 15% PPD award.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's Order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On August 12, 2020, Mr. Gilfilen suffered a workplace injury when the coal loader he was operating dropped into a hole and jarred him, injuring his neck and back. Mr. Gilfilen and a treatment provider at MedExpress Urgent Care completed an application for workers' compensation benefits on August 13, 2020. The treatment provider diagnosed sprains of the cervical, thoracic, and lumbar spine. By order dated August 18, 2020, the

---

[1] For reasons not readily apparent in the appendix record, the petitioner substituted "Rockwood Mining" for the employer that was identified below as "Blackhawk Mining." Consistent with the action of the West Virginia Supreme Court of Appeals in *Delbert v. Murray American Energy, Inc.*, 247 W. Va. 367, 369, n.1, 880 S.E.2d 89, 91, n.1 (2022), we use the name of the employer as designated in the order on appeal: "Blackhawk Mining."

[2] Petitioner is represented by Jane Ann Pancake, Esq., and Jeffrey B. Brannon, Esq. Respondent is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq.

claim administrator held the claim compensable for a lumbar strain/sprain and a cervical sprain/strain.

Mr. Gilfilen's prior medical history reflects that he underwent a cervical spine x-ray in September of 2015. The imaging revealed facet arthropathy at C4-C5 and C5-C6 and neural foraminal narrowing on the right at C4-C5.[3]

On February 22, 2021, Prasadarao B. Mukkamala, M.D., conducted an independent medical evaluation ("IME") of Mr. Gilfilen. In his report, Dr. Mukkamala reviewed various imaging reports that post-dated the injury and noted that mild degenerative changes in the lumbar spine and degenerative changes in the cervical spine were documented. No pre-injury records were mentioned by Dr. Mukkamala. After taking range of motion measurements, Dr. Mukkamala calculated the impairment by using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("AMA *Guides*"). Next, per West Virginia Code of State Rules § 85-20 Table E (2006), Dr. Mukkamala adjusted his impairment rating to fit Cervical Category II of Table E, and assessed 8% whole person impairment ("WPI") for the cervical spine. However, he apportioned 4% of the impairment to Mr. Gilfilen's preexisting degenerative spondyloarthropathy, leaving 4% impairment for the compensable injury. Turning to the lumbar spine impairment, Dr. Mukkamala determined that Mr. Gilfilen had a total of 8% WPI after making the appropriate adjustment to his impairment rating based on the AMA *Guides*, in accordance with West Virginia Code of State Rules § 85-20 Table C. Once again, Dr. Mukkamala apportioned for preexisting degenerative spondyloarthropathy, allocating 5% WPI for the preexisting condition and 3% WPI for the compensable injury. Combining the impairment for the cervical spine and lumbar spine, Dr. Mukkamala concluded that Mr. Gilfilen had a total of 7% WPI as a result of the compensable injury.

By order dated February 25, 2021, the claim administrator granted a 7% PPD award to Mr. Gilfilen based on Dr. Mukkamala's February 22, 2021, report. The order noted that 7% PPD reflected the amount of impairment remaining after Dr. Mukkamala apportioned for preexisting and degenerative cervical and lumbar spondyloarthropathy. Mr. Gilfilen protested this order to the Board.

Bruce A. Guberman, M.D., examined Mr. Gilfilen on April 4, 2022, for an IME. Based on the AMA *Guides* and West Virginia Code of State Rules § 85-20 Table E, Dr. Guberman found that Mr. Gilfilen had 8% WPI for the cervical spine injury. Unlike Dr. Mukkamala, however, Dr. Guberman declined to apportion his impairment rating. Although Dr. Guberman acknowledged that the imaging studies of the cervical spine revealed degenerative changes, he contended that such would not qualify for an impairment

---

[3] We note that Blackhawk Mining's brief mentions a cervical MRI report dated June 19, 2019. This report was also addressed in the Board's order, but was not included in Blackhawk Mining's Appendix.

rating since he noted that there was no evidence of pre-injury cervical impairment. Thus, he determined that there was no basis for apportioning the impairment. For the lumbar spine, Dr. Guberman assessed 8% WPI after applying the AMA *Guides* and West Virginia Code of State Rules § 85-20 Table C. Dr. Guberman acknowledged that imaging studies of the lumbar spine revealed preexisting degenerative changes, but he determined that there was no evidence that Mr. Gilfilen had any ongoing symptoms or impairment in his lumbar spine prior to the compensable injury. Therefore, Dr. Guberman declined to apportion his impairment recommendation for the lumbar spine.

In sum, Dr. Guberman obtained a combined total of 15% WPI for the injury. Since Mr. Gilfilen had previously received 7% PPD, Dr. Guberman recommended an additional 8% PPD for the claim. Dr. Guberman opined that there was no medical rationale to apportion for preexisting conditions in the cervical and lumbar spine, and he did not agree with Dr. Mukkamala regarding apportionment.

On May 20, 2022, Robert B. Walker, M.D., conducted an IME of Mr. Gilfilen and issued a report.[4] After performing a range of motion examination and applying the AMA *Guides*, Dr. Walker arrived at impairment ratings for the cervical and lumbar spine. Pursuant to West Virginia Code of State Rules § 85-20 Tables C and E, Dr. Walker adjusted his ratings and concluded there was 8% WPI for the cervical spine and 8% WPI for the lumbar spine. Dr. Walker then apportioned 2% impairment for the cervical spine based on imaging studies that showed preexisting degenerative changes, which he felt "may mildly influence range of motion measurements." Similarly, for the lumbar spine, Dr. Walker apportioned 1% impairment due to imaging studies that showed mild degenerative changes that had minimal influence on lumbar motion. Thus, for the compensable injury, Dr. Walker assessed 6% WPI for the cervical spine and 7% WPI for the lumbar spine, which he combined for 13% WPI.

---

[4] Blackhawk Mining's brief references Dr. Walker's report dated September 6, 2022, and Blackhawk Mining includes this report in the Appendix filed with this Court. However, this second report by Dr. Walker was not submitted to the Board for its review. Instead, only Dr. Walker's initial report dated May 20, 2022, was submitted to the Board, and Blackhawk Mining did not include this earlier report in its Appendix. Further, the Board found that the May 20, 2022, report included an impermissible impairment rating for the noncompensable thoracic spine, whereas the second report in September of 2022 contained impairment ratings only for the compensable cervical and lumbar spine. We note that Dr. Walker based his September 6, 2022, report on his findings from the May 20, 2022, examination. We remind Blackhawk Mining that, pursuant to Rule 6(b) of the Rules of Appellate Procedure, "[a]nything not filed with the lower tribunal shall not be included in the record on appeal unless the Intermediate Court . . . grants a motion for leave to supplement the record on appeal for good cause shown."

In a supplemental report dated January 30, 2023, Dr. Mukkamala reviewed the reports of Drs. Guberman and Walker at the request of Blackhawk Mining. Dr. Mukkamala opined that Dr. Guberman erred by not apportioning the impairment rating for the degenerative changes in the cervical spine. Importantly, Dr. Mukkamala noted that at a previous examination on November 11, 2020[5], Mr. Gilfilen admitted that he had neck stiffness that predated the compensable injury; thus, Dr. Mukkamala explained that the degenerative cervical conditions were symptomatic prior to the compensable injury, contrary to Dr. Guberman's findings. Dr. Mukkamala also explained that he did not apportion 50% of the impairment for the degenerative conditions and the remainder for the compensable injury. Instead, he said that a 4% WPI for the degenerative cervical condition was appropriate under Table 75 of the Guides. Further, Dr. Mukkamala opined that apportionment was appropriate, regardless of whether the degenerative condition was previously symptomatic, because the compensable injury exacerbated the condition. Dr. Mukkamala commented that Dr. Walker erred in apportioning an incorrect amount of impairment for the degenerative conditions, as he should have apportioned 4% and 5% for the cervical and lumbar spine, respectively.

By order dated May 9, 2023, the Board reversed the claim administrator's order which granted Mr. Gilfilen a 7% PPD award. Instead, the Board granted Mr. Gilfilen an additional 8% PPD for a total of 15% PPD. The Board cited this Court's holding in *Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022), and concluded that Dr. Mukkamala incorrectly apportioned solely based on diagnostic testing that revealed degenerative changes. Based on the evidentiary record, the Board determined that the evidence did not indicate that Mr. Gilfilen had suffered a prior injury to his spine nor had he received "extensive" treatment for any segment of his spine prior to the compensable injury. The Board also ascertained that Dr. Walker's report dated May 20, 2022, was not reliable as it contained an improper impairment rating for the non-compensable thoracic spine. However, the Board concluded that Dr. Guberman's explanation for not apportioning was reliable and established that Mr. Gilfilen had 15% impairment related to the compensable injury. Blackhawk Mining now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the

---

[5] Dr. Mukkamala's report from the examination on November 11, 2020, was addressed in the Board's order, but was not included in the Appendix Blackhawk Mining filed with this Court.

4

petitioner or petitioners have been prejudiced because the Board of Review's findings are:
(1) In violation of statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the Board of Review;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff* at 555, 882 S.E.2d at 921.

On appeal, Blackhawk Mining argues that the Board erred in reversing the claim administrator's order and granting a higher PPD award. Blackhawk Mining asserts that the Board's conclusion that there was no indication of a prior injury, work related or otherwise, was erroneous, arbitrary, and capricious, and was clearly wrong in view of the reliable, probative, and substantial evidence on the whole record. According to Blackhawk Mining, medical records from 2015 and 2019 revealed that Mr. Gilfilen had cervical spine x-rays and an MRI due to neck pain. Further, Blackhawk Mining contends that Mr. Gilfilen was diagnosed with cervical spondylosis, and that Dr. Mukkamala took all of this information into account when he apportioned the impairment for preexisting conditions. Blackhawk Mining also alleges that the Board failed to consider a supplemental report in which Dr. Mukkamala explained that he did not apportion based solely on diagnostic testing.

Upon review, we find that Blackhawk Mining failed to demonstrate that the Board's findings and conclusions were clearly wrong. The Supreme Court of Appeals of West Virginia has held that "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 2, *Stewart v. W. Va. Bd. of Exam'rs for Registered Pro. Nurses*, 197 W. Va. 386, 475 S.E.2d 478 (1996) (citations omitted). With this high standard in mind, we are unable to conclude that the Board erred in awarding Mr. Gilfilen an additional 8% PPD award in accordance with Dr. Guberman's recommendation.

In *Duff*, this Court noted that West Virginia Code § 23-4-9b (2003) requires, in part, that:

Where an employee has a *definitely ascertainable impairment* resulting from an occupational or a nonoccupational injury, disease, or any other cause, whether or not disabling, and the employee thereafter receives an injury in the course of and resulting from his or her employment, unless the subsequent injury results in total permanent disability within the meaning of

5

section one [§ 23-3-1], article three of this chapter, the prior injury, and the effect of the prior injury, and an aggravation, shall not be taken into consideration in fixing the amount of compensation allowed by reason of the subsequent injury.

247 W. Va. at 556, 882 S.E.2d at 922.

Here, the Board found that apportionment for Mr. Gilfilen's cervical spine was not appropriate, as there was no medical evidence of record indicating that Mr. Gilfilen had any prior injuries nor had he received extensive treatment for any segment of his spine prior to the compensable injury. Further, it noted that the diagnostic testing only revealed minimal degenerative changes in his cervical spine. In his supplemental report, Dr. Mukkamala indicated that at a previous examination, Mr. Gilfilen admitted that he had neck stiffness prior to the compensable injury. However, in his report dated February 22, 2021, Dr. Mukkamala did not indicate such when he evaluated, rated, and apportioned for preexisting conditions. Thus, it is not apparent that Dr. Mukkamala's apportionment was based on a determination that the degenerative cervical conditions were symptomatic prior to the compensable injury.

Further, neither Blackhawk Mining nor Dr. Mukkamala proposed any rationale for apportioning the lumbar impairment by more than 60%. The only rationale to support apportionment that Dr. Mukkamala mentioned in his supplemental report pertained to the cervical spine. However, the proportion of impairment that he assigned to preexisting conditions in the lumbar spine was even greater than what he assigned to preexisting cervical spine conditions. The evidentiary record before the Board lacked any reference to preinjury lumbar treatment or even preinjury diagnostic testing. In his February 22, 2021, report, Dr. Mukkamala specifically denoted that he apportioned 5% of the lumbar spine impairment due to degenerative spondyloarthropathy. As noted in *Duff*, the Supreme Court of Appeals of West Virginia has previously recognized that imaging studies (which demonstrated preexisting or degenerative conditions) alone were insufficient to warrant apportionment. 247 W. Va. at 558, 882 S.E.2d at 924. However, apportionment has been upheld "where preexisting conditions were symptomatic prior to the compensable injury." *Id.*

Therefore, under these circumstances, we cannot find that the Board was clearly wrong in determining that apportionment was not appropriate for Mr. Gilfilen's cervical spine and lumbar spine. The evidence does not reflect that Dr. Mukkamala based his apportionment on an admission by Mr. Gilfilen that he had neck stiffness prior to the compensable injury. Further, there is no evidence of preinjury symptoms or treatment of the lumbar spine to support Dr. Mukkamala's apportionment of over 60% of the overall impairment to preexisting lumbar symptoms.

Accordingly, we affirm the Board's May 9, 2023, order.

6

Affirmed.

**ISSUED:** December 27, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen